**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| KEVIN CUMMINGS, | : | CIVIL ACTION NO. 07-4046 (MLC) |
|  | : |  |
| Plaintiff, | : | **MEMORANDUM OPINION** |
|  | : |  |
| v. | : |  |
|  | : |  |
| LISA P. JACKSON, | : |  |
|  | : |  |
| Defendant. | : |  |

**COOPER, District Judge**

The plaintiff pro se, Kevin Cummings, brings this action ("Federal Action") against the defendant — Lisa P. Jackson, as New Jersey Department of Environmental Protection ("NJDEP") Commissioner — to (1) compel "adhere[nce] to the laws governing [his] project and approv[al of] same as submitted", or (2) recover "compensatory damages in the amount of $200,000 for [his] loss due to regulatory condemnation". (Dkt. entry no. 1, Compl., at 6.)

Jackson moves, inter alia, to dismiss the complaint insofar as it may be construed to assert claims against: (1) Jackson in her official capacity, and the NJDEP itself, as they are (a) not "persons" under 42 U.S.C. § 1983, and (b) immune under the Eleventh Amendment; and (2) Jackson in her individual capacity seeking (a) equitable relief under Burford v. Sun Oil Co., 319 U.S. 315 (1943) ("Burford abstention"), and (b) damages under Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172 (1985) ("Williamson") ("First Part of the Motion"). (Dkt. entry no. 5.)

The Court will (1) decide the motion on the papers, <u>see</u> Fed.R.Civ.P. 78(b), (2) grant the First Part of the Motion, (3) deny the remaining parts of the motion without prejudice, (4) deny Cummings's cross motion for miscellaneous relief without prejudice, and (5) dismiss the complaint.

**BACKGROUND**

## I.   Permit Application

The Court will assume Cummings's factual allegations to be true, as they are uncontested.  Cummings, who owns a parcel that is considered a "transition area . . . adjacent to a freshwater wetland" ("Parcel"), applied in 2005 to develop it under the New Jersey Coastal Area Facility Review Act ("NJCAFRA"), N.J.S.A. § 13:19-1, <u>et</u> <u>seq.</u>, arguing that the Parcel is exempt from the "transition area requirements" of the New Jersey Freshwater Wetlands Protection Act ("NJFWPA"), N.J.S.A. § 13:9B-4(d).  (Dkt. entry no. 9, Pl. Br., at 5-7, 10-15; Compl., at 5.)  Section 13:9B-4(d) states that a project for which "subdivision applications have received preliminary approvals from the local authorities pursuant to the Municipal Land Use Law . . . prior to the effective date of this act, [or] (2) . . . subdivision applications have been submitted prior to June 8, 1987" is "exempt from the requirement of a freshwater wetlands permit and transition area requirements".

He also argued that the Parcel should be exempt under the NJFWPA, N.J.S.A. § 13:9B-4(c), as it is an "[area] regulated as a

2

coastal wetland pursuant to [the New Jersey Coastal Wetlands Act ("NJCWA"), N.J.S.A. §] 13:9A-1 et seq." (Compl., at 4.)  He argued that the Parcel "meets the Definition of a Coastal Wetland pursuant to N.J.S.A. § 13:9A-2 . . . and is therefore exempt from permit and transition area requirements pursuant to N.J.S.A. § 13:9A-4(c)." (Pl. Br., at 16; see Pl. Br., at 5; see also Compl., at 5 (stating Parcel "is by [NJCWA] definition a Coastal Wetland . . . and therefore exempt from transition areas").)

He further argued that the NJDEP "identified and delineated Freshwater Wetlands in a tidally influenced Coastal Wetland failing to utilize the mandated Delineation Method for Disturbed Site" under the NJFWPA, N.J.S.A. § 13:9B-3.  (Compl., at 5-6; see Pl. Br., at 5-7.)

The NJDEP, through its Land Use Regulation Program, denied his application.  (Compl., at 2-3.)  A New Jersey Administrative Law Judge ("ALJ"), after a hearing, upheld the denial.  (Id. at 2; Pl. Br., at 6.)  By a decision served on July 2, 2007, Jackson adopted the ALJ's determination ("Agency Decision").  (Compl., at 1; Pl. Br., at 6.)

## II.  **Federal Action**

Cummings brought the Federal Action on August 23, 2007, claiming that the NJDEP "imposed transition area/buffers" and a "regulatory condemnation" upon the Parcel.  (See dkt. entry no. 1 (noting when complaint filed); Compl., at 3.)  He seeks equitable

relief for violations of the Fourteenth Amendment rights of equal protection and substantive due process.  (Pl. Br., at 4-5 (stating he was denied "due process as well as equal protection under the law", and requests "that the NJDEP adhere to the legislated act and rules by regulating in compliance with the [relevant] statutes . . . and by adhering to the legislative intent of the [New Jersey statutes] and approve [his] compliant applied-for project"); id. at 6 (alleging NJDEP engaged in "arbitrary and capricious" conduct in "failing to adhere to the legislative intent clearly implied by the [NJFWPA]").)  He further claims that he is entitled to damages, in effect, under the takings clause of the Fifth Amendment, which is applicable to the states through the Fourteenth Amendment.  (Compl., at 2-6; Pl. Br., at 4.)[1]

### III. Motion

Jackson moves to dismiss the complaint.  (Dkt. entry no. 5, Def. Br.)  Cummings opposes, and cross-moves for miscellaneous relief.  (Dkt. entry no. 9.)

Cummings, in opposition to the motion, further asserts that the NJDEP failed to properly assess (1) New Jersey's definition of open waters under New Jersey Administrative Code § 7:7A-1.4, (2) New Jersey's Municipal Land Use Law ("NJMLUL") under N.J.S.A.

---

[1] Cummings does not cite the takings clause, but the Court will construe the complaint liberally because he is pro se. Furthermore, an equal protection challenge may be brought by a "class of one" in a dispute concerning property regulation. Young v. Town of Coolbaugh, No. 07-2341, 2008 WL 1838629, at *2 (3d Cir. Apr. 25, 2008).

§ 40:55D-7, and (3) New Jersey's Freshwater Protection Act Rules under N.J.A.C. § 7:7A-2.5.  (Pl. Br., at 9-10.)  He further argues that the Parcel was a "disturbed site" before enactment of the NJFWPA, and thus is "a wetland of ordinary resource value" and not one of "intermediate resource value", thereby exempting it from oversight under the NJFWPA, N.J.S.A. § 13:9B-3.  (Pl. Br., at 21-26.)  He also argues that in 2005, during an "extreme weather event", there was an "extreme high tide [whereby] the tidally influenced saltwater [traversed certain points] and thus [caused] flooding", thereby refuting the NJDEP's contention that there is a freshwater wetland on the Parcel.  (Id. at 27.)  He also cites case law from the New Jersey Appellate Division and a 1990 opinion from the New Jersey Attorney General.  (Id. at 7-11.)

**DISCUSSION**

**I.   NJDEP and Jackson In Official Capacity**

42 U.S.C. § 1983 enables a plaintiff to bring a civil action seeking legal and equitable relief against a "person" causing a deprivation of constitutional rights under color of state law. But the NJDEP, and Jackson in her official capacity as NJDEP Commissioner, are not considered "persons" subject to such an action.  See Hanani v. N.J. Dep't of Envtl. Prot., 205 Fed.Appx. 71, 79 (3d Cir. 2006); see also Allen v. Adm. Office of Pa. Cts., No. 07-4783, 2008 WL 723862, at *1 (3d Cir. Mar. 17, 2008).  The Eleventh Amendment also bars civil actions against state agencies

and officials acting in their official capacities, as they are, in effect, brought against the state itself.  See Hanani, 205 Fed.Appx. at 79; see also Allen, 2008 WL 723862, at *1.  It has not been shown that either the State of New Jersey consents to subject its agencies and officials to this type of civil action, or immunity here has been abrogated.  Thus, the Court will grant the part of the motion seeking to dismiss the complaint insofar as it may be construed to assert claims against the NJDEP, and Jackson in her official capacity.

## II.  Equitable Claims Against Jackson In Individual Capacity

### A.   Burford Abstention

A federal court, under the doctrine of Burford abstention, should avoid intrusion into a matter of state concern that is within the special competence of state courts.  Chiropractic Am. v. LaVecchia, 180 F.3d 99, 104 (3d Cir. 1999).  Thus:

> Where timely and adequate state-court review is available [("Available Remedy Criterion")], a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar [("Difficult Question Criterion")]; or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern (["Disruption Criterion"]).

Id. (cites and quotes omitted).

6

But <u>Burford</u> abstention "appl[ies] without regard to the existence of an ongoing proceeding". <u>Stoe v. Flaherty</u>, 436 F.3d 209, 213 (3d Cir. 2006); <u>see</u> <u>Coles v. Street</u>, 38 Fed.Appx. 829, 831 (3d Cir. 2002) (stating pending state court action not needed, as abstention proper when state review is available). Furthermore, the assertion — as here — of as-applied substantive due process and equal protection claims does not bar the Court's application of <u>Burford</u> abstention. <u>Coles</u>, 38 Fed.Appx. at 831; <u>LaVecchia</u>, 180 F.3d at 107-08.

### B.   Difficult Question And Disruption

Cummings's claims implicate (1) the NJCAFRA, N.J.S.A. § 13:19-1, <u>et</u> <u>seq.</u>, (2) the NJFWPA, N.J.S.A. § 13:9B-3 through § 13:9B-4(d), (3) the NJCWA, N.J.S.A. § 13:9A-1 through § 13:9A-4(c), (4) New Jersey Administrative Code Sections 7:7A-1.4 and 7:7A-2.5, (5) the NJMLUL, N.J.S.A. § 40:55D-7, and (6) statements on New Jersey law from the New Jersey Appellate Division and Attorney General.  The Court would need to weigh difficult issues of state law bearing on policy problems of substantial public import — <u>i.e.</u>, environmental protection, wetlands oversight, and land use — the importance of which transcends a result here.  <u>See</u> <u>Sugarloaf Citizens Ass'n v. Montgomery County</u>, No. 93-2475, 1994 WL 447442, at *3 (4th Cir. Aug. 17, 1994) (affirming order dismissing claims concerning construction of "waste facility that may affect Maryland's environment, a matter of obvious public

import with significant repercussions transcending the results of this litigation", as land-use policy is state government's peculiar concern, and federal courts traditionally do not interfere with state courts in "classic <u>Burford</u> situations"); <u>Berman Enters. v. Jorling</u>, 3 F.3d 602, 608 (2d Cir. 1993) (affirming judgment dismissing claim under <u>Burford</u> concerning agency decision barring plaintiff from operating oil and sludge barge in harbor, as "New York, through a combination of statutes and regulations under the Environmental Conservation Law and the Navigation Law, has established a complex, even bewildering, system for regulating . . . pollution").

A review here also would disrupt New Jersey's statutory and regulatory scheme for freshwater wetlands, which is comprehensive and complex, and frustrate its efforts to have a coherent policy in areas of substantial public concern, <u>i.e.</u>, environmental policy, wetlands oversight, and land use.  Cummings's list of relevant New Jersey statutes and related law is illustrative. <u>Sugarloaf</u>, 1994 WL 447442, at *3-*4 (listing 15 parts of Maryland Code to be addressed to resolve environmental issue); <u>Berman</u>, 3 F.3d at 604-05, 608 (abstaining, and leaving issue hinging on proper meaning and reach of several state environmental statutes and regulations to the state).  The Court also would need to examine Jackson's motivations and intentions, which further merits abstention.  <u>See</u> <u>Chiropractic</u>, 180 F.3d at 108 (suggesting same concerning insurance regulation).

"[F]ederal courts" — for the aforementioned reasons — "are generally loathe to interfere with land use regulation". Rucci v. Cranberry Twp., 130 Fed.Appx. 572, 577 (3d Cir. 2005). Thus, the Difficult Question and Disruption Criteria have been met.

### C.   State-Court Review Is Available

Cummings could have taken an appeal from the Agency Decision to the New Jersey Appellate Division. See N.J.Ct.R. 2:2-3(a)(2) (stating procedure for seeking agency-decision review).

The New Jersey Court Rules set time limits for taking an appeal from an agency decision that adjudicates an individual's specific rights, and thus is quasi-judicial in nature; Cummings treats the Agency Decision as being quasi-judicial. See B.H. v. N.J. Dep't of Human Servs., 947 A.2d 698, 705 (N.J. App.Div. 2008).[2] It appears that (1) the 45-day period for Cummings to take an appeal began on July 2, 2007 — when he was served with the Agency Decision — and expired on August 16, 2007, or seven days before he brought the Federal Action, (2) the 30-day period for Cummings to move to extend the time to take the appeal had yet to expire when he brought the Federal Action, but has since expired, and (3) none of the circumstances listed in the New

---

[2]  The time to take an appeal from a quasi-legislative decision is assessed differently. N.W. Covenant Med. Ctr. v. Fishman, 770 A.2d 233, 240-42 (N.J. 2001).

Jersey Court Rules tolling the time to take an appeal seem to apply.  See N.J.Ct.R. 2:4-1(b), 2:4-3(b), 2:4-4(a).[3]

But the New Jersey Appellate Division can still hear an appeal from an agency's quasi-judicial decision that is taken beyond the time limits contained in the New Jersey Court Rules. See Twp. of S. Orange Vill. v. Hunt, 510 A.2d 62, 65-66 (N.J. App.Div. 1986) (reversing agency decision on merits, even though three-year delay in taking appeal was "inexcusable" and "deeply disturbing"); Toma v. N.J. Bd. of Trustees of Police & Firemen's Ret. Sys., 410 A.2d 1175, 1176 n.2 (N.J. App.Div. 1980) (reversing agency decision on merits on appeal taken seven months late, even though disapproving of disregard of pertinent court rules; relying on New Jersey Court Rule 1:1-2, which allows any rule to be relaxed); see also Brown v. Fauver, 819 F.2d 395, 397 n.1 (3d Cir. 1987) (stating limits to take appeal from agency decision do not apply to matters of public importance, and citing New Jersey Supreme Court case — Jacobs v. N.J. State Hwy. Auth., 255 A.2d 266, 268 (N.J. 1969) — discussing precursor to current New Jersey Court Rules); Grexa v. N.J. Dep't of Human Servs., 402 A.2d 938, 940 (N.J. App.Div. 1978) (electing to "pass [a]

---

[3]  The New Jersey Court Rules do not list the commencement of a federal action as a reason to toll the time to move to extend the time to take an appeal from an agency decision.  See 2:4-3(b).  But cf. Galligan v. Westfield Ctr. Serv., 412 A.2d 122, 123-26 (N.J. 1980) (stating commencement of federal action may toll statute of limitations for bringing state-court action).

procedural question [about appeal being untimely taken] without expressing any opinion on it and elect[ing] to dispose of the issues presented on the merits"); <u>Green v. Dep't of Insts. & Agencies</u>, 263 A.2d 796, 797 (N.J. App.Div. 1970) (addressing merits of appeal taken from agency decision, even though stating 45-day initial period ran and no extension sought).

The Court assumes that the NJDEP will not move to dismiss an appeal immediately taken by Cummings from the Agency Decision, as Jackson affirms that this remedy is available to Cummings.  (Def. Br., at 14-15.)  See <u>Zajack v. Div. of Pensions & Benefits</u>, No. A-6467-03T3, 2006 WL 1133868, at *2 (N.J. App.Div. May 1, 2006) (reversing agency decision on merits of untimely appeal, and noting agency "made no motion to dismiss the appeal as untimely"); <u>Hunt</u>, 510 A.2d at 66 n.3 (suggesting untimeliness of appeal taken from agency decision will not be addressed unless agency moves to dismiss); <u>Toma</u>, 410 A.2d at 1176 n.2 (same).

The Appellate Division, being no stranger to the issues raised by Cummings, can provide more-than-adequate review.  <u>See Doyal v. N.J. Dep't of Envtl. Prot.</u>, 915 A.2d 34, 34-39 (N.J. App.Div. 2007) (assessing NJDEP permit denial under NJFWPA and regulations); <u>Dziobek v. N.J. Dep't of Envtl. Prot.</u>, No. A-1107-04T2, 2005 WL 2620904, at *1-*4 (N.J. App.Div. Oct. 17, 2005) (same); <u>Tanurb v. N.J. Dep't of Envtl. Prot</u>., 833 A.2d 670, 672-78 (N.J. App.Div. 2003) (same); <u>Vogel v. N.J. Dep't of Envtl.</u>

Prot., No. A-2017-05T1, 2007 WL 1803200, at *1-*3 (N.J. App.Div. June 25, 2007) (assessing denial under NJCAFRA and regulations). That review of a NJDEP decision is not tantamount to a mere pro forma approval, and can be comprehensive and critical.  See Seigel v. N.J. Dep't of Envtl. Prot., 930 A.2d 461, 462-72 (N.J. App.Div.) (reversing denial of owner's NJCAFRA permit), cert. denied, 937 A.2d 978 (N.J. 2007).  Thus, for the foregoing reasons, the Available Remedy Criterion has been met.

### D.  Conclusion

The Burford abstention criteria have been met as to the claims asserted against Jackson individually for equitable relief.  The Court will grant the part of the motion seeking dismissal of those claims.

## III. Damages Claims Against Jackson In Individual Capacity

### A.  Williamson

> [F]ederal courts do not have subject matter jurisdiction over a takings claim unless the property owner has (1) obtained a final decision from the relevant governmental entity regarding the application of the land use regulations at issue to the property in question, and (2) sought compensation for the taking through the procedures the state has provided for obtaining such compensation, e.g., inverse condemnation.

Behavioral Inst. of Ind. v. Hobart City of Com. Council, 406 F.3d 926, 930-31 (7th Cir. 2005) (citing Williamson, 473 U.S. at 186-95); accord DeNinno v. Mun. of Penn Hills, No. 07-1550, 2008 WL 683968, at *2 (3d Cir. Mar. 14, 2008); Brubaker v. E. Hempfield

Twp., 234 Fed.Appx. 32, 37 (3d Cir. 2007).  The requirements also
apply to the type of as-applied substantive due process and equal
protection claims asserted by Cummings that are based on the same
facts that would underlie a takings claim.  DeNinno, 2008 WL
683968, at *2; Brubaker, 234 Fed.Appx. at 37; Behavioral Inst.,
406 F.3d at 930-31.  A property owner's commencement of an
inverse condemnation action in state court is required, as the
parties may reach an acceptable solution that obviates the need
to address constitutional questions.  Williamson, 473 U.S. at 187.

Cummings's claims for damages are not ripe for adjudication,
as he has not pursued the required state procedure, i.e., an
inverse condemnation action in state court against the NJDEP.
See Chainey v. Street, 523 F.3d 200, 222-23 (3d Cir. 2008).

The NJFWPA itself directs that:

a.  Any person having a recorded interest in land
affected by a freshwater wetlands permit issued,
modified or denied pursuant to the provision of [the
NJFWPA] may file an action in a court of competent
jurisdiction to determine if the issuance, modification
or denial of the freshwater wetlands permit constitutes
a taking of property without just compensation.

b.  If the court determines that the issuance,
modification, or denial of a freshwater wetlands permit
by the [NJDEP] pursuant to this act constitutes a taking
of property without just compensation, the court shall
give the [NJDEP] the option of compensating the property
owner for the full amount of the lost value, condemning
the affected property pursuant to the provisions of the
[New Jersey Eminent Domain Act ("NJEDA"), N.J.S.A. §
20:3-1, et seq.], or modifying its action or inaction
concerning the property so as to minimize the
detrimental effect to the value of the property.

13

N.J.S.A. § 13:9B-22; see United Sav. Bank v. N.J. Dep't of Envtl. Prot., 823 A.2d 873, 876-78 (N.J. App.Div. 2003) (stating owner can bring inverse condemnation claim in state court after NJDEP denies permit under NJFWPA).  An owner bringing an inverse-condemnation state-court action after an adverse NJDEP decision is not unusual.  See Mansoldo v. N.J., 898 A.2d 1018, 1021-24 (N.J. 2006) (concerning inverse condemnation action brought by owner denied hardship waiver from regulation by NJDEP after ALJ hearing; stating court not estopped by ALJ's findings from determining whether NJDEP committed a taking).

The state court's analysis in such an action after a permit denial under the NJFWPA can be comprehensive, as the state court may (1) direct the parties to confer about development prospects, (2) direct the NJDEP to consider other plans, (3) hear testimony on the parcel's history and development prospects, (4) appraise the property value, and (5) consider the interplay of the NJFWPA and related regulations with other laws and property rights.  See E. Cape May Assocs. v. N.J. Dep't Envtl. Prot., 777 A.2d 1015, 1019-32 (N.J. App.Div. 2001) (concerning inverse condemnation action after NJDEP's denial of permit under NJFWPA).

The NJEDA, regardless of the NJFWPA, also authorizes the state courts to provide comprehensive relief to an owner alleging inverse condemnation by a state agency.  See N.J.S.A. § 20:3-5 (stating state court has jurisdiction over condemnation matters,

and "all matters incidental thereto and arising therefrom");
Schiavone Constr. Co. v. Hackensack Meadowlands Dev. Comm'n, 486
A.2d 330, 334 (N.J. 1985) (stating NJEDA provides relief from
inverse condemnation); Raab v. Bor. of Avalon, 921 A.2d 470, 472
(N.J. App.Div.) (discussing inverse condemnation action), cert.
denied, 932 A.2d 26 (N.J. 2007).  Furthermore, the statute of
limitations on Cummings's cause of action does not appear to have
run.  See N.J.S.A. § 2A:14-1 (six-year limitations period).

Cummings attempts to downplay his takings claim.  (See Pl.
Br., at 9 (stating "complaint is not that of a 'Taking' claim")).
The attempt is without merit.  (See Compl., at 6 (seeking damages
for regulatory condemnation); dkt. entry no. 9, Notice of Cross
Mot., & Pl. Br., at 30 (seeking "relief as per the demand listed
in the complaint", and entry of judgment as to claims in
complaint).)  Further, a regulatory condemnation is a taking.
See Lindquist v. Buckingham Twp., 68 Fed.Appx. 288, 290 (3d Cir.
2003) (stating "regulatory taking claim" unripe because plaintiff
had not used state's "inverse condemnation" procedure); PC Air
Rights v. Mayor & Council of City of Hackensack, No. L-5350-05,
2006 WL 2035669, at *10 (N.J. Super.Ct. July 20, 2006) (stating
determination whether regulatory taking occurred made in inverse
condemnation action).  Thus, the Court will grant the motion
insofar as it seeks to dismiss the claim to recover damages
against Jackson in her individual capacity as unripe.

15

**B.   Burford Abstention**

The Court need not address whether the damages claims may be dismissed under Burford.   See Gilbert v. City of Cambridge, 932 F.2d 51, 67 n.21 (1st Cir. 1991) (stating same after Williamson addressed).   But the Burford criteria appear to be met.   A remedy is available: an inverse condemnation action under the NJFWPA and the NJEDA.   The Court would need to address difficult state-law issues on land use, environmental protection, and eminent domain, all presenting policy problems of substantial public import.   The Court — if addressing the claims — in one fell swoop could disrupt New Jersey's efforts to establish coherent policies on wetlands and land development, and any resulting inverse condemnation. Furthermore, claims — such as those Cummings asserts — seeking damages that are in federal court by way of 28 U.S.C. § 1331, as opposed to common-law damages under 28 U.S.C. § 1332, may be dismissed under Burford.   Coles, 38 Fed.Appx. at 832 (rejecting argument that holding in Quackenbush v. Allstate Insurance Co., 517 U.S. 706, 719-22 (1996), only permits court to stay federal claims).   The Court notes all of this to further stress to Cummings that he should proceed in the state courts.

**CONCLUSION**

The Court will:

(1) grant the part of the motion that seeks to dismiss the complaint insofar as it may be construed to assert claims

16

against:  (a) Jackson in her official capacity, and the NJDEP itself, as they are (i) not "persons" under 42 U.S.C. § 1983, and (ii) immune under the Eleventh Amendment; and (b) Jackson in her individual capacity seeking (i) equitable relief under Burford abstention, and (ii) damages as unripe under Williamson;

(2) deny the remaining parts of the motion without prejudice;

(3) deny Cummings's cross motion for miscellaneous relief without prejudice; and

(4) dismiss the complaint.

The Court concludes that Cummings's claims will not be adjudicated here, and the Federal Action must be terminated. Cummings must determine how to proceed either on his own, or — perhaps — through consultation with retained counsel.  The Court will issue an appropriate order and judgment.

s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge

Dated:    June 30, 2008